## Chicago & Eastern Illinois Railroad Company v. E. R. Boggs.

CARRIER—*when liability of, for negligence, is to consignor and not to consignee.* Where a shipment is made to the consignee who has not agreed to accept the same unless the merchandise is up to a certain grade, the right of action for negligence in transporting is in the consignor where the consignee rejects the shipment.

Action on the case. Appeal from the Circuit Court of Moultrie county; the Hon. PAUL McWILLIAMS, Judge, presiding. Heard in this court at the November term, 1906. Affirmed. Opinion filed June 1, 1907.

EDEN & MARTIN, for appellant.

EDWIN J. MILLER, for appellee.

MR. JUSTICE BAUME delivered the opinion of the court.

This is an action on the case by appellee against appellant to recover damages alleged to have resulted through the negligence of appellant in transporting corn from Kirksville, Illinois, to Nashville, Tennessee. A trial by jury in the Circuit Court of Moultrie county resulted in a verdict and judgment against appellant for $334.

March 12, 1903, the Big Four Elevator Co., of Mattoon, purchased of appellee one car No. 3, or better, corn at forty cents a bushel, f. o. b. Kirksville, Illinois, Nashville, Tennessee, weights and grades. The car was to be billed to order of appellee, with directions to notify the purchaser at Nashville. March 20th, appellee loaded car No. 2754 of appellant with No. 3 corn for shipment to Nashville and the same was carried by appellant to Mt. Vernon, Illinois, where it arrived March 22nd, and was transferred to the "Y" track to be carried to Nashville by the L. & N. Railroad. Thereafter, the L. & N. Railroad having in-

spected the car and found it out of repair, switched it, together with an empty car, on appellant's track for the purpose of having the corn reloaded. The corn was then reloaded by appellant in the L. & N. car, and that car switched on the "Y." The L. & N. Railroad then weighed the car, and finding it overloaded refused to carry it and switched it back to appellant's track where a portion of the corn was transferred by appellant to another car belonging to the L. & N. Railroad. On April 3rd the two cars left Mt. Vernon for Nashville, via the L. & N. Railroad, and arrived in Nashville April 8th. About March 30th, appellee not having been advised of the arrival of the corn at Nashville, notified the agent of appellant at Sullivan and was informed that necessary steps would be taken to trace the shipment. The bill of lading for the corn was sent to the Bill-Duff Commission Co., at Nashville, and there is some evidence tending to show that on April 3rd Mr. Bell caused the agent of the L. & N. Railroad to be notified that his company was expecting a shipment of corn from Kirksville in appellant's car No. 2754. However this may be, the evidence tends to show that a few days thereafter Mr. Bell saw two L. & N. cars on the track tagged Big Four Elevator Co., and that he called the attention of an employe of the L. & N. Railroad to the fact and suggested that those cars might contain the corn which was shipped in appellant's car No. 2754, and that he was informed by the employe that the L. & N. Railroad was then tracing said cars. Two or three days thereafter an agent of the L. & N. Railroad notified the commission company that the two cars mentioned contained the corn shipped in appellant's car. Thereupon the commission company, on April 20th, surrendered the bill of lading and the two cars were delivered at the elevator on April 24th. When the cars were unloaded the corn was found to be hot, blue-eyed and swollen and was marked by the inspector "N. E. G.," meaning, no established grade.

Appellee was required to pay freight charges amounting to $122.74, demurrage amounting to $16, and charges for insurance and for handling, cleaning and drying the damaged corn, amounting to $76.54, making a total of $215.54. The corn sold for thirty cents a bushel, or approximately $120 less than the contract price.

It is insisted on behalf of appellant that appellee having sold the corn at Kirksville, the right of action for damages, if any, resulting from delay is in the purchaser, and not in appellee. While the question does not appear to have been raised in the trial court, we are clearly of opinion that under the facts of this case the suit was properly brought by appellee. The corn was consigned to the order of appellee and the terms of the sale required that it should grade No. 3, or better, at Nashville.

If the corn did not grade No. 3, or better, at Nashville, the purchaser was not bound to receive it, and the sale was, therefore, a sale upon conditions to be performed at Nashville. The corn having failed to come up to grade at Nashville and the purchaser not asserting any rights under his contract of purchase and bill of lading, which appellee had indorsed and delivered to it, the sale was never consummated, and the right of action for damages against the party responsible therefor is in appellee.

It is further urged that appellee was responsible for overloading the car at Kirksville and for the consequent delay in Mt. Vernon incident to necessarily reloading the corn. The car as loaded by appellee was received by appellant at Kirksville without objection and no facilities were afforded by appellant at that point to weigh the car. Under the circumstances, we do not think appellant is in a position to shift the responsibility for that delay upon appellee. Furthermore, the length of time consumed by appellant in reloading the corn at Mt. Vernon, and by its connecting line in carrying it from Mr. Vernon to Nashville, was

manifestly unreasonable. The corn was in Mt. Vernon from March 22nd to April 3rd, and did not arrive in Nashville until April 8th. It appears from the uncontradicted evidence in the record that the length of time necessary to transport a car from Mt. Vernon to Nashville is one day.

It may be doubted whether the connecting carrier of appellant was responsible for all of the delay that occurred at Nashville after the arrival of the corn and until it was delivered to the commission company, but the evidence justifies the conclusion that it was unable to identify the shipment upon its arrival and that an unreasonable length of time intervened before the commission company was assured that the two cars of the L. & N. Railroad contained the corn which was shipped by appellee.

The evidence tends to show that during the season of the year when the shipment in question was made corn confined in cars from six to ten days will germinate and become heated and damaged, and we are clearly of opinion that the damage resulting to appellee is due to the negligence of appellant and its connecting carrier.

It is urged that the freight and demurrage charges paid by appellee are not proper elements of damage to be recovered by him. Appellee had sold his corn at forty cents a bushel, f. o. b. Kirksville, conditioned upon its grading No. 3, or better, at Nashville. The evidence tends to show that the corn when shipped was of a quality, which, if transported to Nashville without unreasonable delay, would have graded there as No. 3, or better. The purchaser not being bound to receive the corn, because of its damaged condition, appellee was obliged to pay the freight and demurrage charges in order to obtain it and fit it for sale, and was entitled to recover the charges so paid.

The receipts showing the payment by appellee of the freight and demurrage charges, and the certificates

of inspection of the corn, were not improperly admitted in evidence.

There is no substantial error in the record and the judgment will be affirmed.

*Affirmed.*